UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DUSTIN MARTIN,

          Plaintiff,

vs.

FULLER BRISBON, *et al.*,

          Defendants.

Case No.: 2:22-cv-02083-GMN-EJY

**ORDER DENYING MOTION TO DISMISS**

Pending before the Court is the Motion to Dismiss, (ECF No. 16), filed by Defendant Correctional Officers Miguel Fuller-Brisbon and James Buckley. Plaintiff Dustin Martin filed a Response, (ECF No. 20), to which Defendants filed a Reply, (ECF No. 22). For the following reasons, the Court **DENIES** Defendants' Motion to Dismiss.

**I.      BACKGROUND**

Plaintiff, a former inmate at High Desert State Prison ("HDSP"), brings this suit against two Defendant Correctional Officers who opened the door separating protective custody inmates from the general population, thereby allowing a general population inmate to strike Plaintiff in the back of his head, breaking his jaw. (*See generally* Compl., ECF No. 4). Before this incident, Plaintiff was involved with a prison gang. (*Id.* at 6). When Plaintiff decided to leave the gang, he spoke to HDSP officers, who then moved Plaintiff into a segregated prison unit. (*Id.* at 5). Gang members put out a "hit" on plaintiff, claiming that anyone who hurt or killed Plaintiff would be compensated. (*Id.* at 6).

On the day of the incident, Plaintiff was working as a unit porter in Unit 4-A, and the inmate who attacked him was working as a unit porter in Unit 4-B. (*Id.* at 4). The inmates were unrestrained in their units, but separated by a deadbolted door that could only be accessed by a key from the floor officer, Defendant Fuller, or electronically by the tower officer, Defendant

Page 1 of 10

Buckley. (*Id.*). The officers were trained to keep the general population inmates in Unit 4-B separate from the protective custody inmates in Unit 4-A unless they were restrained. (*Id.* at 4, 7). Additionally, inmates are escorted individually by officers to prevent interactions between the inmates. (*Id.* at 7). For example, Plaintiff alleges that if an inmate escaped from behind a locked door and attacked another inmate being transported in restraints, it would be a "MJ2 (Major Violation)." (*Id.* at 8).

While Plaintiff and his attacker were working as unit porters on either side of the gate, unrestrained, Defendants "negligently" opened the door separating the two units. (*Id.* at 5). This allowed the general population inmate from Unit 4-B to enter Unit 4-A and strike Plaintiff in the back of the head. (*Id.*). Plaintiff explains that the door could not "accidentally" be opened, and that inmates could not open the door without an officer's assistance. (*Id.* at 6). In Plaintiff's attached Disciplinary Report, Defendant Fuller stated that he heard "a loud pop," turned around, and saw Plaintiff laying on the floor as the attacking inmate walked away. (*Id.* at 7). After the incident, Plaintiff was taken to a hospital where he received stitches for the cut on his head and underwent surgery to have plates and screws inserted in his jaw. (*Id.* at 9). When Plaintiff returned to HDSP, he overheard gang members claiming they had set up the incident for him to be assaulted. (*Id.* at 10).

Plaintiff brings a claim for "Deliberate Indifference to Plaintiff's safety," which the Court interprets as an Eighth Amendment Failure to Protect claim. (*Id.* at 4); (Screening Order 4:6, ECF No. 3). Defendants move to dismiss based on failure to allege facts sufficient to support an Eighth Amendment claim and the defense of qualified immunity. (*See generally* Mot. Dismiss, ECF No. 16).

**II.     LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a

legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III. DISCUSSION

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834.  To demonstrate that a prison official was deliberately indifferent, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk" to the inmate's safety, and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837.  This requires an inmate to establish that the conditions in the prison "objectively" posed "a substantial risk of serious harm," and that "subjectively," the officer was aware of the risk. *See id.* at 834.  Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836.  Although deliberate indifference "describes a state of mind more blameworthy than negligence," a plaintiff is not required to allege purposeful conduct. *Id.* at 835.

Defendants argue that because Plaintiff alleged the officers were "negligent" in leaving the door open, Plaintiff failed to allege the required state of mind for deliberate indifference or establish the subjective awareness of serious harm. (Mot. Dismiss 4:16–21; 5:3–9). Defendants further claim that Plaintiff failed to allege facts showing the attacker posed an objectively substantial risk of harm. (*Id.* 4:22–5:2). Lastly, Defendants argue that they are entitled to qualified immunity. (*Id.* 5:21–6:18). Plaintiff responds that his Complaint was "based upon the fact that the Defendants were trained in proper procedure for closed custody inmates," but that Defendants "intentionally acted out of direct violation" of that training policy. (Resp. 1:19–20; 28). The Court begins its analysis by evaluating whether Plaintiff alleged sufficient facts demonstrating that the prison conditions objectively posed a risk of serious harm.

### A. Objectively Serious

In a failure to protect claim, an inmate satisfies the "sufficiently serious deprivation" requirement by "show[ing] that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. "A deprivation is sufficiently serious when the prison official's act or omission results 'in the denial of the minimal civilized measure of life's necessities.'" *Id.* "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk . . . for reasons personal to him or because all prisoners in his situation face such a risk." *Id.* at 843.

Defendants argue Plaintiff failed to "establish that his attacker objectively posed a substantial risk of serious harm to [Plaintiff] prior to the attack." (Mot. Dismiss 4:22–5:2). In support, Defendants cite *Labatad v. Corrections Corporation of America*, in which the Ninth Circuit found a record, viewed objectively and subjectively, insufficient to preclude summary judgment on a deliberate indifference claim. 714 F.3d 1155, 1161 (9th Cir. 2013). In *Labatad*, the court noted that even though the inmates were in different gangs, the two inmates had been together in the general population with no record of problems, and the attacker was not listed as

a "separatee" for the plaintiff inmate. *Id.* Thus, it did not find an objectively substantial risk of serious harm. *Id.*

Here, however, Plaintiff has alleged facts demonstrating that Defendants' actions created an objectively substantial risk of serious harm. The facts in *Labatad* are distinguishable from the facts in this case because Plaintiff informed HDSP that he wanted to leave the gang he was involved in and the prison then placed him in protective custody, separate from the general population. (Compl. at 5). Further, Plaintiff alleged that his former gang members put out a "hit" on him, claiming that anyone who hurt or killed Plaintiff would be compensated. (*Id.* at 6). Even if there was no record of threats between the two inmates in this case, inmates are placed in segregation to protect them from the risk of inmate-on-inmate violence, and HDSP has policies in place to reinforce the separation. (*Id.* at 4, 7). Whether the risk of harm to Plaintiff was for a reason personal to him, or because all inmates in protective custody due to former gang affiliation face a risk of attack from inmates in the general population, is inconsequential. *See Farmer,* 511 U.S. at 843.

The Court finds two California district court cases instructive here. In the first case, *Manzanillo v. Lewis*, the court found that a genuine issue of material fact existed as to whether an inmate housed in segregation was exposed to an objectively substantial risk of serious harm when an officer left his cell door unlocked, allowing an inmate from a rival gang to walk in the area, unescorted, in violation of prison policy. 267 F. Supp. 3d 1261, 1271–72 (N.D. Cal. 2017). Evidence indicated that inmate-on-inmate violence commonly occurred in the segregated housing unit, that the role of the Control Booth Officer was to keep inmates separated to prevent such violence, and that the prison had policies in place regarding inmate movement. *Id.* at 1272.

In the second case, *Barnett v. Fisher*, the court determined that the plaintiff inmate was not at a substantial risk of serious harm when he was randomly attacked by another inmate

because the staff failed to escort his attacker per proper prison procedure. No. 1:17-cv-01361-DAD-JLT (PC), 2020 WL 7182087, at *4 (E.D. Cal. Dec. 7, 2020), *report and recommendation adopted*, No. 1:17-cv-01361-DAD-JLT (PC), 2021 WL 598536 (E.D. Cal. Feb. 16, 2021).  The plaintiff did not present evidence that his attacker was particularly aggressive, that inmate assaults were common in the dining hall, or that the inmates were members of rival gangs. *Id.* at *4–5.  Thus, the court found that the defendant officer's failure to follow procedure, without more, was not enough to show that the plaintiff was at a substantial risk of serious harm. *Id.*

Like the plaintiff in *Manzanilla* who demonstrated that the prison had policies to place to avoid the risk of a rival gang member interacting with an inmate from another gang, Plaintiff here alleges that HDSP had policies in place regarding inmate movement whose purpose was to prevent inmate-on-inmate violence. (Compl. at 4, 7).  But this case is not merely about the violation of a prison procedure.  Unlike the random dining hall attack in *Barnett*, the attack as alleged in this case did not appear random.  Because Plaintiff left his former gang, prison officials rehoused him in a segregated unit for his own protection. (*Id.* at 5).  He also heard gang members stating that they had set up the attack and put out a "hit" on Plaintiff. (*Id.* at 6, 10).  And Defendants, who had trained on procedures designed to prevent violence on protected inmates, violated those procedures by allowing a general population inmate to interact with protective custody inmates while unrestrained.  For these reasons, the Court finds that Plaintiff sufficiently alleged that he was exposed to an objectively substantial risk of serious harm.

**B.  Subjective Awareness of the Risk**

The Court next determines whether Defendants knew of the substantial risk to Plaintiff and disregarded it.  As Defendants correctly point out, Plaintiff alleges multiple times in his Complaint that Defendants "negligently" opened the door between the Units, (*see* Compl. at 3, 5–6, 9) which is not enough to demonstrate deliberate indifference. *Farmer,* 511 U.S at 836.

The Court disagrees with Defendants, however, that this is automatically fatal to Plaintiff's claim. A "handwritten pro se document is to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). And a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

"[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S at 836. As explained above, recklessness in this context requires that the officer is aware of the "acts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Id.* at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Liberally construing the Complaint, the Court finds the allegations to imply that Defendants may have been more than merely negligent. The proper inquiry is not whether Defendants knew that opening the door would pose a serious risk of harm to Plaintiff specifically, but whether they knew it would pose a serious risk of harm to someone in Plaintiff's situation. *See Lemire v. California Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1077 (9th Cir. 2013). Plaintiff sufficiently alleged that they did. The Complaint alleges that due to their training, Defendants were "well aware that at no point in time shall a [protective custody] inmate and a [general population] inmate cohabitate in the same dwelling unrestricted for any reason." (Compl. at 4). Plaintiff alleges that inmates are escorted one at a time, in restraints, to

prevent injury and death to inmates. (*Id.* at 7). Plaintiff informed HDSP that he wanted to leave the gang he was involved in, and they put him in protective custody for his own protection. (*Id.* at 5). And even if Defendants were not aware that a "hit" had been put out on Plaintiff for leaving the gang, the proper inquiry is whether Defendants knew that opening the door between the general population and segregation units would cause a serious risk of harm to someone in protection for leaving a gang.

Finally, in Plaintiff's Response, he alleged that Defendants propped open the door between units, thus "intentionally" violating their training policy. (Resp. 1:25–27). Based on what *pro se* Plaintiff has alleged to this point, the Court does not find that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," and thus does not dismiss the Complaint. *See Haines*, 404 U.S. at 520–21. Plaintiff has alleged basic facts that, accepted as true, indicate Defendants knew the door between the units should not have been opened while inmates were unrestrained but did so anyway. Therefore, the Court finds that Plaintiff has sufficiently alleged an Eighth Amendment Failure to Protect claim.

**C. Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Thus, to overcome a claim of immunity, Plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A right is "clearly established" when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he

is doing violates that right.'" *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 741).

Although courts may consider a qualified immunity defense raised in a motion to dismiss, determining claims of qualified immunity at this stage "raises special problems for legal decision making." *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 395 (N.D. Cal. 2021) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)). "On the one hand, [courts] may not dismiss a complaint making a claim to relief that is plausible on its face." *Keates*, 883 F.3d at 1234 (internal quotation marks omitted). "But on the other hand, defendants are entitled to qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1234–35 (internal quotation marks omitted). At the motion to dismiss stage, granting dismissal is only appropriate if the Court can determine, "based on the complaint itself," that qualified immunity applies. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

A "qualified immunity analysis often turns on the specific facts of each alleged violation," and the facts here are not yet developed before the Court. *See NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 396 (N.D. Cal. 2021). Regardless, taking Plaintiff's allegations as true and with all inferences in his favor, "it was clearly established in the Ninth Circuit that prison officials violate inmates' constitutional rights when the officials are aware 'that placing inmates of different races [or gangs] in [the same place] at the same time presents a serious risk of violent outbreaks,' yet allow them to be in the same place together anyway." *Manzanillo*, 267 F. Supp. 3d at 1274 (citing *Robinson v. Prunty*, 249 F.3d 862, 867 (9th Cir. 2001)). Accordingly, to the extent Defendants' current Motion to Dismiss argues for qualified immunity because this case does not present a clearly established right, their Motion is denied.

///

## V.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 16), is **DENIED.**

**DATED** this   3   day of January, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT